UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | | |
|---|---|---|
| CHARLES CHIPPS, | ) | CIV. 10-5028-JLV |
| | ) | |
| Petitioner, | ) | |
| | ) | ORDER HOLDING IN |
| vs. | ) | ABEYANCE PETITIONER'S |
| | ) | APPLICATION FOR WRIT OF |
| OGLALA SIOUX TRIBAL COURT; | ) | HABEAS CORPUS |
| OGLALA SIOUX TRIBE | ) | |
| DEPARTMENT OF PUBLIC | ) | |
| SAFETY; and DARWIN LONG, | ) | |
| Administrator, Oglala Sioux | ) | |
| Tribal Jail, | ) | |
| | ) | |
| Respondents. | ) | |

## INTRODUCTION

On April 29, 2010, petitioner Charles Chipps filed an application for writ

of habeas corpus pursuant to 25 U.S.C. § 1303. (Docket 1).[1] Mr. Chipps

alleged respondents violated his statutory rights under the Indian Civil Rights

Act, 25 U.S.C. §§ 1301-1303. Id. Mr. Chipps seeks release from the custody of

the Oglala Sioux Tribe.[2] Id. at p. 5. After careful consideration, the court holds

in abeyance Mr. Chipps' application pending exhaustion of tribal remedies.

_____

[1]Mr. Chipps filed his application *pro se.* (Docket 1). He simultaneously
filed a motion for leave to proceed *in forma pauperis* and for appointment of
counsel. (Docket 2). Mr. Chipps submitted a financial affidavit in support of
his motion. (Docket 3). The court granted *in forma pauperis* status to
Mr. Chipps, finding him indigent and unable to afford the costs and fees
associated with these proceedings. (Docket 4). The court also found the
appointment of counsel necessary pursuant to the Fifth Amended Plan for the
Attorney Admission and Pro Bono Fund § 2.6. (Dockets 4 & 5).

[2]Mr. Chipps' criminal case in the Oglala Sioux Tribal Court is CRI-09-
1042K.

## FACTUAL AND PROCEDURAL HISTORY

The court held a hearing on Mr. Chipps' application on May 6, 2010. Mr. Chipps appeared in person[3] and by his counsel, Terry L. Pechota. Marwin Smith, Attorney General for the Oglala Sioux Tribe, appeared on behalf of the Oglala Sioux Tribal Court. Attorney Elizabeth Lorina appeared on behalf of the Oglala Sioux Department of Public Safety. Three witnesses testified at the hearing: Glenda Black Feather, clerk of the Oglala Sioux Tribal Court in Pine Ridge, South Dakota; Susan Schrader, lay advocate; and Dr. Rory Sumners, a physician for Indian Health Services ("IHS"). From the evidence and testimony presented at the hearing, the court adduces the following facts.

Mr. Chipps is 62 years old and is a lifelong resident of the Pine Ridge Indian Reservation in South Dakota. Mr. Chipps is a recognized religious leader in the Native American community.

On July 1, 2009, a prosecutor for the Oglala Sioux Tribe (hereinafter "the Tribe") filed multiple criminal complaints against Charles Chipps in the Oglala Sioux Tribal Court (hereinafter "tribal court"). (Exhibits 1 & 2).[4] The complaints alleged four counts of sexual assault and four counts of child abuse, all in violation of the Tribe's penal code. Id. On July 1, 2009, the Honorable Rae Ann Red Owl issued arrest warrants for Mr. Chipps. Id. Tribal

---

[3]On April 30, 2010, the court issued a writ of habeas corpus directed to Mr. Chipps' current custodian, Darwin Long, Administrator of the Oglala Sioux Tribal Jail, to transport Mr. Chipps to the hearing. (Docket 6).

[4]The exhibits referenced throughout this opinion were admitted into evidence at the May 6, 2010, hearing. See Docket 13 (Exhibit List).

authorities arrested Mr. Chipps on July 1, 2009, and advised him of his rights. (Exhibit 3). Mr. Chipps pled not guilty at his arraignment. (Exhibit 5 at p. 1). Judge Red Owl issued a temporary commitment order on July 2, 2009, committing Mr. Chipps to the custody of the Oglalal Sioux Tribal Jail (hereinafter "tribal jail") in Pine Ridge, South Dakota, until his trial date set for September 8, 2009. (Exhibit 4; <u>see also</u> Exhibits 38 & 39 (notices of trial date)).

On July 23, 2009, lay advocate Susan Schrader, who represented Mr. Chipps during the early stages of his criminal case, filed a motion for temporary release pending a bond hearing. (Exhibit 6). Mr. Chipps sought to be released from July 24, 2009, to July 28, 2009, to attend a Sundance ceremony. <u>Id.</u> As a spiritual leader, Mr. Chipps had conducted the ceremony for twenty years. (Exhibit 5). Because of the absence of court staff during the week of the Sundance, Mr. Chipps' bond hearing was not scheduled until July 28, 2009–the last day of the ceremony. (Exhibit 6). Mr. Chipps represented he was not a flight risk as he was a lifelong resident of the community. <u>Id.</u> He further represented he had secured a trailer during the Sundance to separate himself from the participants, except for those seeking his intercession. <u>Id.</u> Attached to the motion were letters of support and prayers for release from Sundance participants and Mr. Chipps' *pro se* motion for temporary release dated July 16, 2009. (Exhibits 5 & 6). Chief Judge Patrick Lee, Chief Judge of the tribal court, denied the motion. (Exhibit 6 at p. 2).

Mr. Chipps' July 28, 2009, bond hearing was rescheduled for August 6, 2009. (Exhibit 7). On July 30, 2009, Mr. Chipps, by and through Ms. Schrader, filed a motion for temporary release pending the rescheduled bond hearing. Mr. Chipps represented he was not a risk of flight or a danger to the community. Id. Ms. Schrader simultaneously filed a motion for change of venue, seeking to transfer this matter from Kyle to Pine Ridge to expedite the bond hearing. (Exhibit 8).

On August 12, 2009, Chief Judge Lee denied Mr. Chipps' request to be released on bond. (Exhibit 9). He noted the letters of support offered by Mr. Chipps did not include the names of children. Id. at p. 1. Chief Judge Lee found the alleged minor victims of these offenses would live in fear if Mr. Chipps was released on bond. Id. He further found that, although Mr. Chipps was presumed innocent, there was "substantial probable cause to believe he is guilty–sufficient to justify an arrest warrant, and sufficient to justify an order the he be held without bond." Id.

On September 11, 2009, the Honorable Saunie Wilson on behalf of Chief Judge Lee issued an order for temporary release to allow Mr. Chipps to attend the funeral of his mother. (Exhibit 10). The order directed the tribal jail to release Mr. Chipps on September 21, 2009, at 8:30 a.m., with a police escort, and to return Mr. Chipps to jail after the funeral. Id.

On September 14, 2009, Mr. Chipps, by and through lay advocate Francis Pumpkin Seed, filed a petition for writ of habeas corpus and memorandum. (Exhibit 11). Mr. Chipps argued that under tribal law, he was

4

entitled to be released on bond as he was not a danger to himself or the community and he was not a flight risk.  Id.  Mr. Chipps alleged he was denied due process of law, thereby justifying his immediate release from incarceration. Id.  Chief Judge Lee set this matter for an immediate hearing.  Id. at p. 2.

The tribal prosecutor and the Attorney General's Office moved the court for a five-day extension of the hearing to prepare and subpoena witnesses. (Exhibit 12).  Chief Judge Lee granted the motion and set the hearing for September 24, 2009.  Id.  After hearing oral argument from the parties and considering the procedural history of the case, Chief Judge Lee denied Mr. Chipps' petition for writ of habeas corpus on October 1, 2009.  (Exhibit 35). Chief Judge Lee supported his decision as follows:

> This Court as well as other courts throughout the nation have adopted a policy of denying bail where there is probable cause that the Defendant is a danger to himself or to the community.  In this case the Court found earlier that the Defendant should not be released on bail because of a potential threat to children.  The Tribal prosecutor argues that the case is under federal investigation; that the FBI forensic crime lab has completed its forensic investigation and that the federal investigator advised the Attorney General that she is willing to testify for the Tribe when the Defendant goes to trial.

Id. at. pp. 1-2.

On October 27, 2009, Mr. Chipps moved for temporary release due to lack of prosecution by the Attorney General.  (Exhibit 37).  Mr. Chipps noted he was not subject to a federal hold and the alleged victims were in the custody of Child Protective Services.  Id.  On October 27, 2009, Chief Judge Lee issued a final order denying Mr. Chipps' motion for release, which the court interpreted as a motion for reconsideration.  (Exhibit 36).  The order incorporated by

reference the court's October 1, 2009, order.  Id.  Importantly, Chief Judge Lee

make the following findings:

> The Court has considered the fact that the children who were
> allegedly abused by the Defendant would not be in the presence of
> the Defendant if he were released, but the Court concludes that the
> age of the children being older at this time is not persuasive
> argument for releasing the Defendant where there is no guarantee
> that some children would not be in the presence of the Defendant if
> her [sic] were released.
>
> The Habeas Corpus hearing held in September was to determine if
> the Defendant was being lawfully held by the Court, and the Court
> found that he was subject to the jurisdiction of the Court and was
> charged with a heinous crime.  The fact that the Law and Order Code
> allows a Defendant to be released on bail does not deprive the court
> of its discretion to deny bail if it finds that the Defendant presents a
> danger to the community.  The Court found that the Defendant is a
> danger to children and for that reason has decided to retain the
> Defendant until his trial either in Tribal Court or in federal court.

Id.

On January 26, 2010, Mr. Chipps, by and through his counsel Terry L.

Pechota, filed a motion to dismiss the charges for a violation of the right to

speedy trial or, in the alternative, for release pending trial.  (Exhibit 15).

Mr. Chipps argued there was no justification or excuse for the delay of his trial.

He further argued he already had been incarcerated longer than the maximum

sentence on any one charge, thereby violating the prohibition against cruel and

unusual punishment.  Id.  Mr. Chipps alleged continued incarceration was

dangerous to his health and well being.  Id.  In support, he attached a letter

dated December 31, 2009, from Dr. Rory Sumners and a letter dated January

14, 2010, from Rick Stoltenburg, a physician's assistant.  Id.; see also Dockets

13 & 14. Dr. Sumner opined, "in light of his current medical problems, Mr. Chip' [sic] overall health and welfare would be best served by any situation that might allow him to be released from incarceration for medical reasons." (Exhibit 13). Mr. Stoltenburg opined, "There are environmental and nutritional factors that play an important role in Mr. Chips [sic] being able to provide the necessary means to maintain good health and I believe that his incarceration is not in his medical best interests." (Exhibit 14).

On January 31, 2010, Mr. Chipps became ill and was transported to the Pine Ridge IHS Hospital. Hospital staff administered two liters of blood to Mr. Chipps and life flighted him to Sanford Hospital in Sioux Falls, South Dakota, where he was given an additional three liters of blood. He stayed at Sanford Hospital from February 1, 2010 to February 5, 2010. Upon his return to the tribal jail, staff members were directed to monitor Mr. Chipps closely for bleeding and provide prescribed pain medication as needed. (Exhibit 20). Mr. Chipps testified his illness was due to the poor diet provided by the tribal jail, lack of access to his medications, improper administration of his medications, and inability to practice his religion.

Dr. Sumners testified Mr. Chipps also suffers from diabetes, hypertension, high cholesterol, residual paralysis from polio, benign prosthetic hypertrophy, and severe gastrointestinal damage due to bleeding gastric ulcers. Mr. Chipps' health requires medications and monitoring by doctors and dieticians. Dr. Sumners testified Mr. Chipps was anxious about his

incarceration and worried he would not receive a nutritious diet and would not have regular access to his medications and medical care providers.

On February 4, 2010, Mr. Chipps filed an amended motion to dismiss identical to his January 26, 2010, motion to dismiss. (Exhibit 16). A hearing on this matter was scheduled for February 12, 2010. (Exhibit 22).

On or about February 4, 2010, Mr. Pechota discussed possible release plans with Attorney General Marwin Smith. (Exhibit 26 at ¶ 2). The parties agreed Mr. Pechota should draft a stipulation for Mr. Smith's review. Id. at ¶ 3. Mr. Smith asked Mr. Pechota to obtain the approval of the United States Attorney's Office. Id. at ¶ 4. On February 6, 2010, Mr. Pechota faxed to Assistant United States Attorney Robert Mandel a proposed stipulation of release pending trial. (Exhibit 17). The proposed stipulation set forth certain conditions of release Mr. Chipps would agree to abide by. Id. Mr. Mandel indicated he wanted to discuss this matter with the tribal prosecutor before approving the stipulation. (Exhibit 18). Mr. Pechota also provided a copy of the stipulation to Mr. Smith. (Exhibit 19).

On February 10, 2010, Attorney General Smith moved to hold Mr. Chipps' case in abeyance pending completion of the federal investigation into the underlying charges. (Exhibit 21). The tribal court found it in the best interests of justice to hold Mr. Chipps' case in abeyance and detain him until completion of the federal investigation. Id. Mr. Pechota did not receive notification of the motion for abeyance or the tribal court's order until February 12, 2010, when Mr. Pechota called the clerk of criminal courts to confirm the

hearing on his motion to dismiss and was informed of the abeyance. (Docket 22).

On February 16, 2010, Mr. Chipps filed a notice of appeal of the tribal court's order holding his case in abeyance and continuing his detention. (Exhibit 23). Mr. Chipps identified the "issues being appealed are the deprivation of appellant's right to a speedy trial, right to reasonable bond pending trial, wrongful exercise of custody, cruel and inhuman custody, wrongful exparte [sic] communication with the court, and failure to hear defendant's motions seeking relief for all of the above." (Exhibit 23 at p. 1). Mr. Chipps simultaneously filed a request for reconsideration of the court's abeyance order. (Exhibit 24).

Also on February 16, 2010, in the Tribe's Supreme Court (hereinafter "the Court"), Mr. Chipps filed a motion for expedited consideration and mandamus to the lower court. (Exhibit 25). Mr. Chipps moved the Court to direct the lower court to hold a hearing on his motion to dismiss, to set promptly this matter for trial, and to consider releasing him on conditions pending trial. Id. Mr. Chipps argued he had "been deprived of a plethora of constitutional and statutory rights, including the right to speedy trial and the right to have bond set under conditions as set by the Court." Id. at p. 2. Mr. Pechota submitted an affidavit in support of the motion. (Docket 26). The Court set oral arguments on this matter for March 5, 2010. (Exhibit 27).

In the interim, on March 4, 2010, the Honorable Diane M. Zephier of the tribal court heard oral argument on Mr. Chipps' motion for reconsideration.

(Exhibits 28 & 29). Judge Zephier denied the motion and affirmed the tribal court's order continuing Mr. Chipps' detention until the federal government "takes jurisdiction." (Exhibit 29). With respect to Mr. Chipps' speedy trial claim, Judge Zephier noted Chapter 8, Section 1-2 of the Oglala Sioux Tribe Law and Order Code provides for "a year or longer if for good cause for it to prosecute." Id. at p. 1. With respect to Mr. Chipps' claim regarding the negative impact of continued incarceration on his health, Judge Zephier noted Mr. Chipps could receive necessary medical treatment through the jail. Id. Judge Zephier declined to consider the proposed stipulations for release given the seriousness of the offenses. Id.

Oral argument before the Court on Mr. Chipps' appeal occurred on March 5, 2010. (Exhibit 27). The Court issued its order on April 16, 2010. (Exhibit 31 at p. 5). The Court considered the lower court's February 10, 2010, order holding Mr. Chipps' case in abeyance and the March 4, 2010, order denying Mr. Chipps' motion for reconsideration. Id. at p. 1. The Court found the lower court erred in construing Chapter 8, Section 1-2 of the Oglala Sioux Tribe Law and Order Code. Id. The lower court construed this section to mean the prosecution has one year to prosecute the case. Id. The Court noted, however, this section has no impact on the speedy trial analysis as it simply requires a complaint be filed within one year after the commission of the offense. Id. at pp. 1-2.

At oral argument, both sides stipulated the Tribe's Law and Order Code contained no speedy trial provision. Id. at p. 2. Mr. Chipps urged the Court to

adopt the Speedy Trial Act, 18 U.S.C. § 3161, which is binding on the federal government.  Id.  The Court declined to do so, however, for several reasons.  Id. The Court noted the prosecution could not proceed with its case against Mr. Chipps because the federal government was in possession of all the evidence.  Id. at p. 3.  The Court further noted the lower court does not have the resources of the federal government in that it does not have its own investigators and only has one tribal prosecutor.  Id.  "These two factors alone make it impossible for the Tribe to follow the dictates of the Speedy Trial Act." Id.

However, the Court adopted United States Supreme Court precedent regarding speedy trial issues prior to the adoption of the Speedy Trial Act.  Id. The Court specifically considered the United States Supreme Court case, Barker v. Wingo, 407 U.S. 514 (1972), which set forth an "ad hoc balancing approach to determine if an individual has been denied a right to speedy trial." (Exhibit 31 at p. 3).  The Barker Court identified four factors courts should consider in this analysis: "length of delay, the reason for the delay, the defendant's assertion of is [sic] right and prejudice to the defendant."  Id. (citing Barker, 407 U.S. at 531).

The Court examined Mr. Chipps' case within the context of the Barker factors.  The Court found his case had been delayed to give the federal government time to complete its investigation, not to give the Tribe an advantage.  Id.  The Court also found the Tribe's cooperation with the federal government by detaining Mr. Chipps in jail was highly prejudicial to

Mr. Chipps.  Id. at p. 4.  The Court noted, however, the delay and prejudice to

Mr. Chipps must be balanced against the Tribe's lack of access to the evidence.

Id.  The Court found the Tribe could not be faulted for the lack of access to

evidence and could not proceed to trial without the evidence.  Id.  The Court

also considered the protection of the alleged victims in this case, determining

the alleged victims should be protected from having to testify in multiple

proceedings in two jurisdictions.  Id.  "The nature of the allegations and

charges compel the government to move cautiously."  Id.

The Court ultimately decided to order Mr. Chipps be brought to trial by

June 30, 2010, vacating the lower court's order holding Mr. Chipps' case in

abeyance.  Id. at p. 5.  In reaching this conclusion, the Court's reasoning is

instructive:

> This does not mean that the Court condoned the Tribe's tactics in
> this matter.  To seek an ex parte abeyance order and deliberately hold
> the Defendant until the federal government concludes its
> investigations is highly prejudicial to the Defendant.  On the other
> hand, this Court does not want to get into the legislative arena by
> stating the Tribe adopts the Speedy Trial Act or that the Court hereby
> adopts a bright line rule with regard to when the Tribe must bring the
> matter to trial.  In this case, due to the nature of the charges, the
> lack of access to evidence and the need to protect the victim(s), we
> cannot say that the Tribe has violated the Defendant's right to a
> speedy trial.  However, the Tribe must bring this matter to fruition by
> June 30, 2010.  We conclude that in this matter, that the Tribe will
> have one (1) year to bring this matter to trial.

Id. at p. 4.

Mr. Pechota sent a letter dated April 29, 2010, to the Oglala Sioux Tribe

Department of Public Safety inquiring as to Mr. Chipps' medications.

(Docket 32).  Mr. Chipps indicated he was not receiving his medications, of particular concern was his diabetes medication.  Id.  Mr. Chipps indicated he was being given aspirin, yet he was advised by health care professionals not to take aspirin because of a serious bleeding ulcer.  Id.

On April 29, 2010, in the United District Court for the District of South Dakota, Mr. Chipps filed an application for writ of habeas corpus pursuant to 25 U.S.C. § 1303.  (Docket 1).  Mr. Chipps named as respondents the Oglala Sioux Tribal Court, the Oglala Sioux Tribe Department of Public Safety, and Darwin Long, Administrator of the Oglala Sioux Tribal Jail.  Id. at p. 1.  In his application, Mr. Chipps alleges (1) respondents have violated his right to a speedy trial under  § 1302(6); (2) continued incarceration is "dangerous to [his] health and well being" given his current medical condition and overall health; (3) respondents have violated the prohibition against cruel and unusual punishment under § 1302(7) by holding him in custody in excess of the maximum term of imprisonment for the charges; and (4) respondents have violated the prohibition against unreasonable search and seizures under § 1302(2) and his right to equal protection and due process under § 1302(8).  Id. at ¶¶ 16, 20-23.  Finally, Mr. Chipps requests the action be certified as a class action on behalf of all other persons denied a speedy trial by the tribal court.  Id. at ¶ 24.  On May 5, 2010, Mr. Chipps provided supplemental briefing on the speedy trial issue only.  (Docket 11).

**DISCUSSION**

At the May 6, 2010, hearing on Mr. Chipps' application, Mr. Chipps provided argument only on his speedy trial claim. Further, Mr. Chipps briefed only his speedy trial claim. Consequently, the court will limit its consideration to the speedy trial claim.

The key issue in this case is whether a federal court has jurisdiction to entertain Mr. Chipps' application. To resolve this issue, the court looks to case law governing the Indian Civil Rights Act (ICRA) and the writ of habeas corpus under 25 U.S.C. § 1303.

**A. ICRA**

In 1961, a congressional committee began conducting hearings to investigate complaints of civil rights violations in Indian country. Cohen's Handbook of Federal Indian Law § 14.04[2] at p. 951 (2005 ed.). The committee eventually produced a bill that imposed certain restrictions on tribal governments similar, but not identical, to the restrictions imposed on federal and state governments by the Bill of Rights and the Fourteenth Amendment. Id.; Santa Clara Pueblo v. Martinez, 436 U.S. 49, 57 (1978). In 1968, Congress passed this bill into law and enacted ICRA. Cohen's Handbook of Federal Indian Law, *supra* at p. 952. "[A] central purpose of the ICRA and in particular of Title I was to 'secur[e] for the American Indian the broad constitutional rights afforded to other Americans,' and thereby to 'protect individual Indians from arbitrary and unjust actions of tribal governments.'" Martinez, 436 U.S. at 60-61 (quoting S. Rep. No. 841, 90th Cong., 1st Sess., 5-6 (1967)). The

constitutional restrictions on Indian tribes are codified at 25 U.S.C. § 1302. Cohen's Handbook of Federal Indian Law, *supra* at p. 952. Most relevant to this discussion is § 1302(6), which prohibits any Indian tribe, when exercising its powers of self-government, to "deny to any person in a criminal proceeding the right to a speedy and public trial . . . ." 25 U.S.C. § 1302(6).

The pivotal United States Supreme Court case interpreting ICRA is Santa Clara Pueblo v. Martinez. In Martinez, the Supreme Court reaffirmed that "Indian tribes are 'distinct, independent political communities, retaining their original natural rights' in matters of local self-government." Martinez, 436 U.S. at 55 (additional citations omitted). Indian tribes have the power to promulgate substantive laws to regulate internal matters and to enforce those laws in their own forums. Id. at 55-56 (additional citations omitted). However, the Court recognized the plenary authority of Congress to enact legislation like ICRA that "limit, modify or eliminate the powers of local self-government which the tribes otherwise possess." Id. at 56-57 (additional citations omitted). The Court indicated that the intent of Congress in enacting ICRA was twofold: (1) to "strengthen[] the position of individual tribal members vis-a-vis the tribe," and (2) "to promote the well-established federal 'policy of furthering Indian self-government.' " Id. at 62 (additional citations omitted). The provisions of ICRA reflect the commitment of Congress to protect tribal sovereignty from undue interference from federal and state government. Id. at 62, 63.

The Court noted that Title I of ICRA did not expressly authorize civil actions for declaratory or injunctive relief to enforce its provisions. Id. at 51-

52.  Congress expressly supplied *only* the writ of habeas corpus as a remedial measure under ICRA for persons in tribal custody.  Id. at 58; see also Cohen's Handbook of Federal Indian Law, *supra* at p. 955 (The Martinez Court "interpreted ICRA to limit federal court enforcement to habeas corpus jurisdiction over claims by persons in tribal custody.").  In light of Congress' dual objectives in enacting ICRA, the Court held that "[c]reation of a federal cause of action for the enforcement of rights created in Title I, however useful it might be in securing compliance with § 1302, plainly would be at odds with the congressional goal of protecting tribal self-government."  Martinez, 436 U.S. at 64.  Further, implying a federal remedy "is not plainly required" because tribal forums are available to vindicate any infringement of rights provided by ICRA.  Id. at 65.  Absent express Congressional intent, the Court declined to imply a federal cause of action in addition to the habeas corpus provision expressly provided for in § 1303.  Id.  That is, § 1302 "does not impliedly authorize actions for declaratory or injunctive relief against either the tribe or its officers."  Id. at 72.

It is against this backdrop that the court considers Mr. Chipps' application.  ICRA must be read as providing only a limited mechanism for federal judicial review of tribal actions.  Id. at 70.  Congressional investigation revealed that most of the abuses of tribal power occurred within the criminal context.  Id. at 71.  In limiting federal judicial review of tribal matters to only habeas corpus, Congress manifested its "desire not to intrude needlessly on tribal self-government[.]"  Id.  "By not exposing tribal officials to the full array of

federal remedies available to redress actions of federal and state officials, Congress may also have considered that resolution of statutory issues under § 1302, and particularly those issues likely to arise in a civil context, will frequently depend on questions of tribal tradition and custom which tribal forums may be in a better position to evaluate than federal courts." Id.  In a similar vein, the Martinez Court cautioned the federal judiciary from impeding a tribe's ability "to maintain itself as a culturally and politically distinct entity" by creating causes of action under § 1302.  Id. at 71.  It is with this understanding that the court turns to the issue of whether § 1303 provides a cause of action for Mr. Chipps.[5]

**B.      Section 1303**

As noted by the Martinez Court, § 1303 is "the exclusive means for federal-court review of tribal criminal proceedings." Id. at 67.  Section 1303 states, "[t]he privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe."  25 U.S.C. § 1303.  Section 1303 was not "intended to have broader reach than cognate statutory provisions governing collateral review of state and federal action."  Poodry v. Tonawanda Band of Seneca

---

[5]The Martinez Court further held that tribes retained sovereign immunity from suits arising under ICRA, although the tribes' immunity did not protect tribal officers from suit.  Martinez, 436 U.S. at 59.  As § 1303 is the only remedy available to enforce the rights created under ICRA, the proper respondent in a § 1303 action is the individual custodian of the prisoner. Wells v. Philbrick, 486 F. Supp. 807, 809 (D.S.D. 1980) (citing Martinez, 436 U.S. at 59).  Here, Mr. Chipps properly named his current custodian, Darwin Long, Administrator of the Oglala Sioux Tribal Jail, as a respondent.

Indians, 85 F.3d 874, 879-80 (2d Cir. 1996), *cert. denied*, 519 U.S. 1041

(1996).  Accordingly, Mr. Chipps must satisfy two prerequisites before a federal

court will hear his habeas petition: (1) he must be in the custody of an Indian

tribe and (2) he must have exhausted all available tribal remedies.  Jeffredo v.

Macarro, 599 F.3d 913, 918 (9th Cir. 2010) (" '[A]ll federal courts addressing

the issue mandate that two prerequisites be satisfied before they will hear a

habeas petition filed under the ICRA: [ (1) ] The petitioner must be in custody,

and [ (2) ] the petitioner must first exhaust tribal remedies.' ") (quoting Cohen's

Handbook of Federal Indian Law, *supra* at § 9.09 & § 9.09 n. 280).[6]  There is no

question Mr. Chipps is being detained by the Tribe.  Indeed, excluding the one

day he was released to attend his mother's funeral, Mr. Chipps has been in

continuous detention since his arrest by tribal authorities on July 1, 2009.

See Poodry, 85 F.3d at 880 ("As with other statutory provisions governing

habeas relief, one seeking to invoke jurisdiction of a federal court under § 1303

must demonstrate . . . a severe actual or potential restraint on liberty."); see

also Jeffredo, 599 F.3d at 918  ("The term 'detention' in the statute must be

interpreted similarly to the 'in custody' requirement in other habeas contexts.").

_____

[6]Some courts have added a third requirement–that the tribal proceeding
must have been criminal and not civil in nature.  Cohen's Handbook of Federal
Indian Law, *supra* at § 9.09 n. 280; see also Quair v. Sisco, 359 F. Supp. 2d
948, 963 (E.D. Cal. 2004) ("In order to be entitled to a writ of habeas corpus,
petitioners must establish that the decision which they are requesting this
court to review is criminal and not civil in nature; that petitioners are being
detained by the Tribe; and that petitioners have exhausted all other available
remedies.").  The court need not resolve this issue as it is clear Mr. Chipps is
challenging the handling of his tribal criminal case.

Thus, the only issue is whether Mr. Chipps has exhausted tribal remedies. For the reasons set forth below, the court finds he has not.

"[A]s a matter of comity, tribal remedies must ordinarily be exhausted before a claim is asserted in federal court under the Indian Civil Rights Act." Lavallie v. Turtle Mountain Tribal Court, No. 4:06-cv-77, 2006 WL 3498559 at *3 (D. N.D. Dec. 1, 2006) (collecting cases); Wounded Knee v. Andera, 416 F. Supp. 1236, 1239 (D.S.D. 1976) (same); O'Neal v. Cheyenne River Sioux Tribe, 482 F.2d 1140 (8th Cir. 1973) (extending the tribal exhaustion requirement to federal review of tribal actions under ICRA). "Even when a federal court has jurisdiction over a claim, if the claim arises in Indian country, the court is required to 'stay its hand' until the party has exhausted all available tribal remedies." Jeffredo, 599 F.3d at 918; see also Selam v. Warm Springs Tribal Correctional Facility, 134 F.3d 948, 953 (9th Cir. 1988) ("The Supreme Court's policy of nurturing tribal self-government strongly discourages federal courts from assuming jurisdiction over unexhausted claims.").

However, the exhaustion rule is not absolute, rigid, or inflexible. Wounded Knee, 416 F. Supp. at 1239. A district court should not require a petitioner to exhaust tribal remedies if the remedy is ineffective, futile, or meaningless. Id. The court in Wounded Knee explained this principle as follows:

> In each case wherein an exhaustion question arises, the Court must make inquiry to see what the law demands under the circumstances. The need to adjudicate alleged deprivations of individual rights must be balanced against the need to preserve the cultural identity of the tribe by strengthening the tribe's own institutions. In all events a

> Petitioner need not go through the motions of exhaustion if he or she proves that resort to remedies provided by the tribe would be futile. If a tribal remedy in theory is non-existent in fact or at best inadequate, it might not need to be exhausted. If a Petitioner does all that is possible but an attempted appeal is frustrated by official inaction, no more can be demanded, and the exhaustion requirement is satisfied.

Id. (internal citations omitted); see also United States ex rel. Cobell v. Cobell, 503 F.2d 790, 793-94 (9th Cir. 1974), *cert. denied sub nom.* Sharp v. Cobell, 421 U.S. 999 (1975) (finding petitioner lacked a meaningful remedy in the tribal courts and, thus, had not failed to exhaust tribal remedies when the remedies were available in theory, but not in fact). Further, "exhaustion is not required if an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith, if the action is patently violative of express jurisdictional prohibitions, or if exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." DeMent v. Oglala Sioux Tribal Court, 874 F.2d 510, 516 (8th Cir. 1989) (citing National Farmers Union Ins. Co. v. Crow Tribe, 471 U.S. 845, 856 n. 21 (1985).

The court finds the Tribe's Supreme Court has provided a non-futile, available remedy to Mr. Chipps. The Court has ordered the Attorney General to hold Mr. Chipps' trial by June 30, 2010. (Exhibit 31 at p. 4). Further, at the May 7, 2010, hearing, Attorney General Smith definitively represented to the court he would dismiss the charges against Mr. Chipps if his trial did not commence by June 30, 2010. The Court thoroughly examined the speedy trial issue within the context of United States Supreme Court precedent. Upon careful consideration of the issue, the Court took affirmative steps to rectify the

situation. Although the wheels of justice are turning slowly, they are turning. Indian tribes have the inherent authority to make and enforce their criminal laws against Indian people on Indian lands. United States v. Long, 324 F.3d 475, 480 (7th Cir. 2003). This court will not infringe on the Tribe's authority by short circuiting the Court's viable efforts to provide relief to Mr. Chipps.

Given the long history of this case, the court finds it in the best interests of justice to hold Mr. Chipps' application in abeyance until June 30, 2010. A district court has the discretion to dismiss a federal action or hold it in abeyance pending exhaustion of tribal remedies. National Farmers Union Ins. Co., 471 U.S. at 857. Mr. Pechota shall notify the court as to the status of the case on June 30, 2010. If the Attorney General brings Mr. Chipps to trial by that date, the court shall dismiss as moot Mr. Chipps' application. If the Attorney General dismisses the charges on or before June 30, 2010, the court shall dismiss as moot Mr. Chipps' application. However, if Mr. Chipps is not brought to trial by June 30, 2010, and the tribal charges are still pending against him, the court will deem exhausted all tribal remedies and will consider Mr. Chipps' application on the merits.

## CONCLUSION

In accordance with the above discussion, it is hereby

ORDERED that Mr. Chipps' application for writ of habeas corpus (Docket 1) is held in abeyance until June 30, 2010.

IT IS FURTHER ORDERED that, on June 30, 2010, counsel for

Mr. Chipps shall notify the court as to the status of Mr. Chipps' tribal case.

Dated May 18, 2010.

BY THE COURT:

/s/ *Jeffrey L. Viken*

JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE